WESTMINSTER I APARTMENTS, Plaintiff-Appellant, v. LESLIE C. BARNARD, Defendant-Appellee.

First District (5th Division)   No. 86—2143

Opinion filed October 23, 1987.

Jonathan L. Mills and George C. Pontikes, both of Foss, Schuman, Drake & Barnard, of Chicago, and Stephen B. Cohen, of Cohen, Stark & Burchett, of Northbrook, for appellant.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen, Mark K. Schoenfield, and James K. Genden, of counsel), for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff, Westminster I Apartments, brought an action, as assignee of Happiest Partners Corporation (HPC) against Leslie Barnard for breach of a partnership contract, fraud, breach of fiduciary duty and an accounting, and now appeals from that portion of the trial court's order granting judgment for Barnard on the counts alleging breach of contract and fiduciary duty.

Plaintiff contends that the trial court erred in finding that the parties' respective interests in the property which was the subject matter of the partnership were held by them as individual owners rather than as partners for the benefit of the partnership.

The position taken by plaintiff in its brief was that "[t]he trial court's findings were predicated on an erroneous understanding of the facts." Specifically, plaintiff strenuously disputed the trial court's statement that "[although] [t]he partnership agreement *** required Barnard to contribute real estate to the HPC-Barnard partnership *** contemporaneously with the execution of this agreement, an escrow was entered into between the partners that substantially changed this arrangement." Plaintiff represented to this court that "all parties acknowledged that the escrow arrangement was an accommodation to Barnard's inability to convey the Property to the Partnership" and "was obviously entered into after the Agreement."

However, when the parties appeared for arguments before us, plaintiff expressly withdrew its argument that the escrow and partnership agreements were not contemporaneous while nevertheless adhering to its position that the escrow agreement was nothing more than a minor, isolated modification of the terms of the partnership agreement specifying the manner in which title to the partnership property would be held which was entered into only as a necessary accommodation, without consideration, to Barnard's inability to convey the property to the partnership in accordance with the terms of the partnership agreement. Plaintiff maintains that contrary to the trial court's findings, Barnard's treatment of the interest he held as his own rather than as partnership property constituted a breach of his fiduciary duty to the partnership and a breach of contract of such magnitude as to vitiate the entire agreement.

■ It is fundamental that in a bench trial, the credibility of witnesses and the meaning of the language in a contract are questions for the trial court and that its findings will not be reversed unless they are contrary to the manifest weight of the evidence. (*Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 457

N.E.2d 66.) With that principle in mind, we turn to the record before us, which discloses that on April 1, 1975, HPC, a real estate investment corporation, and Barnard, a real estate developer, entered into an agreement to organize a limited partnership to deal with phase one of the Westminster Apartment Complex in the village of Country Hills (the village). The agreement provided that HPC was to make a capital contribution of $250,000 to the partnership in two installments of $150,000 and $100,000 on May 15, 1975, and January 15, 1976, respectively, for which it would receive a 40% interest in the partnership. Upon payment of the first installment, Barnard was to convey all of his interest in the property—which, he warranted, consisted of a 100% beneficial interest in the First National Bank of Blue Island land trust (the trust) in which the property was held—in return for a 60% interest in the partnership. Barnard was required to pay HPC a fixed monthly profit of $1,000 between May 15, 1976, to January 1, 1977, and $1,666.67 per month thereafter. Paragraph 7 named Barnard as managing partner of the partnership and designated his responsibilities as manager of the property, but also stated that "[he] shall not be personally liable to HAPPIEST, (beyond his interest in the partnership) so long as he makes no distribution to himself or his successors or assigns, prior to complying with all provisions of paragraph 7(b) hereof." Under paragraph 13, if either party defaulted, *i.e.*, if HPC failed to make timely payment of the second installment or Barnard failed to fulfill his responsibilities under the agreement, the other could elect, after giving 25 days' written notice, to "terminate [the defaulting party's] interest in the partnership"; whereupon the defaulting party would be required to assign his or its interests under the agreement to the nondefaulting partner and forfeit any capital contributions made to that date. The property was, for purposes of the agreement, deemed to have a gross value of $2,159,000 and was subject to a first mortgage of approximately $1,900,000.

The parties also executed an escrow agreement, which, as has now been conceded by plaintiff, was "of even date," in which it was agreed that Barnard would assign to HPC a 40% beneficial interest in the trust upon receipt of the $150,000; that HPC would then reassign that interest to HPC to be held in escrow by Barnard's attorney, Kalman Schein, until payment of the second installment, at which time it would be reassigned to HPC. Barnard's assignment to HPC of the 40% beneficial interest was delivered to HPC's attorney, Robert Bromberg, together with a transmittal letter dated May 20, 1975, requesting acknowledgment by his signature and return of the letter that "the assignment of the 40% and retention by Barnard of the

60% beneficial interest in the trust was in full compliance by Barnard of that portion [concerning contributions] of the Partnership agreement." Bromberg signed the letter on behalf of HPC and returned it to Schein. When Barnard took the assignment to the trustee, however, he was reminded that he had made a previous collateral assignment of 100% of his beneficial interest to the village in lieu of a performance bond to complete certain improvements on the property. Barnard testified, and Schein corroborated, that he (Barnard) immediately notified Schein and directed him to seek a release of that assignment from the village. Barnard further testified that when he informed Bromberg, by telephone, of the collateral assignment, Bromberg's response was, essentially, "Don't worry about it; just get our 40% back." In contrast, Bromberg testified that he learned of the collateral assignment to the village when *he* called Schein to inquire why he had not received the executed assignment and that he advised Schein that he wanted "Barnard's full interest reconveyed to him from [the village] because the agreement required that he have his interest unencumbered in the security."

In a letter to the village attorney requesting release of 40% of the assignment held by the village, Schein urged that the liens on the remaining 60% of the beneficial interest of the trust, together with its 100% interest in property designated for phase II of the development, were "more than sufficient surety for the improvements." On June 19, 1975, the village executed an assignment to Barnard of 40% of the beneficial interest it held, which was held in escrow by Schein and then reassigned to HPC immediately following HPC's payment of the second installment in January 1976.

According to Barnard's testimony, by the summer of 1976, revenues from the apartment complex were no longer sufficient to meet operating costs and, after voluntarily contributing $20,000 of his own funds in an effort to salvage the project, he ran out of money and was unable to perform his obligations under the partnership agreement or to make the improvements for which he had executed the collateral assignment of beneficial interest to the village in lieu of a performance bond. He provided HPC with monthly statements showing less-than-anticipated occupancy of the apartments, and in a meeting with Igor Borkowski, HPC's president, at Bromberg's office he asked Borkowski to contribute more money and/or to take over the management of the property, both of which Borkowski declined to do. Barnard denied that HPC demanded or he agreed, at that or any other meeting, to assign his 60% beneficial interest to HPC or the partnership as Borkowski and Bromberg testified. Barnard further

testified that he advised HPC that he had received notice from the village of his default and of its intention to sell the 60% beneficial interest to satisfy the amount necessary to complete the improvements—which the parties agreed was between $11,000 and $26,000—and encouraged HPC to negotiate with the village for the purchase of that interest. He also contacted the village attorney and told him that it was his hope that HPC would acquire the 60% interest and that in order to facilitate and expedite such an agreement, he orally agreed to waive any further notice regarding its sale. Bromberg subsequently informed both Schein and Barnard that an agreement with the village was close to finalization but, in fall 1976, the village attorney informed Schein that negotiations had broken down because HPC refused to pay $7,000 for attorney fees sought by the village. He also advised Schein that Evergreen, the mortgagee, was pressuring him to sell the interest to it and threatening to exercise the assignment of rents previously executed by the trustee. Schein related this conversation to Bromberg, who confirmed that the negotiations had been stymied by the issue of attorney fees but once more rejected the suggestion that HPC take over the management of the property. In November 1976, Evergreen exercised its assignment of rents and began to manage the property and, on December 10, 1976, also instituted proceedings to foreclose on the mortgage.

During this same period, Barnard was engaged in litigation with Evergreen concerning loans on three other real estate projects. In January 1977, a settlement agreement was reached whereby Evergreen agreed to release Barnard from his personal guarantees on those notes in return for which Barnard agreed to execute deeds in lieu of foreclosure and to dismiss his counterclaim against Evergreen for failure to honor a loan commitment. On January 11, 1977, as Barnard and Schein met with officers of Evergreen at the First National Bank of Blue Island to finalize the settlement agreement, the village attorney entered and presented Barnard with (1) a "Notice of Private Sale" of the 60% beneficial interest to be held "on or after January 11, 1977" and (2) an "Acknowledgment of Notice and Default and Waiver" to confirm his previous oral waiver of notice. Neither Barnard nor Schein had any knowledge, prior to January 11, of the sale or that Evergreen had filed a foreclosure action. When Barnard and Schein inquired whether HPC had been given notice of the sale, the land trustee informed them that HPC had never lodged any assignment of beneficial interest in the trust and that, therefore, according to the trust documents, Barnard remained the sole owner of the beneficial interest which he had collaterally assigned to the vil-

lage. Barnard then executed a duplicate assignment to HPC and an affidavit stating that HPC owned 40% of the beneficial interest and "insisted" it be recorded by the land trustee and that no action be taken which would jeopardize HPC's rights. Schein telephoned Bromberg from the bank, but was unable to reach him until later that day, at which time Schein advised Bromberg of the foreclosure action, the proposed private sale and the duplicate assignment. When Bromberg later informed him that he could not locate the original assignment, Schein prepared another copy and sent it to Bromberg. Barnard, by Schein, also sent a letter confirming their conversation regarding the events which had transpired on January 11 and, in accordance with Bromberg's request, included copies of the documents executed that day. Neither Barnard nor Schein was present for or otherwise had knowledge of the sale of the 60% beneficial interest, which, apparently, took place sometime after they left the bank on January 11, 1977.

Shortly thereafter, Bromberg and Borkowski asked Barnard to assist them in the foreclosure action and, at a meeting in late January, presented him with an unexecuted assignment of the 60% interest which they requested he sign. Stating that the 60% was no longer his to assign, Barnard refused. On January 21, 1977, a default order was entered against the trustee in the foreclosure action and on January 26, 1977, HPC's petition, as owner of a 40% beneficial interest, to intervene was allowed; and it thereafter also filed a petition for special equitable relief, alleging that it desired to cure the amount of default under the Evergreen mortgage and requesting that the trial court assess 60% of the default to Evergreen and enter an order dismissing Evergreen's complaint upon its (HPC's) payment of the remaining 40%. The trial court's order dismissing Evergreen's complaint without prejudice one day before the expiration of the 90-day curing period so as to prevent a possible forfeiture of HPC's interest was reversed by this court in *Evergreen Savings & Loan Association v. Barnard* (1978), 65 Ill. App. 3d 492; 382 N.E.2d 467,[1] and the complaint was reinstated with directions that the 90-day period resume upon the filing of the appellate court mandate in the circuit court. The appellate court also determined, *inter alia,* that under the curing statute, HPC was required to tender the entire amount of the default in order to stand in the position of the trust-mortgagor, adding that

---

[1]Although originally named in the suit, Barnard was dismissed as a defendant after Evergreen purchased his beneficial interest and released him from his personal obligation on the note.

whether full payment by HPC "results in Evergreen's unjust enrichment as owner of 60% of the beneficial interest, cannot be judicially determined at this time" (65 Ill. App. 3d 492, 500, 382 N.E.2d 467, 473), and remanded the case so as to allow HPC one day to cure the default. HPC failed to do so, because, it maintains, it was unable to secure the full amount necessary and Evergreen therefore acquired the property.

■■ Having carefully reviewed the extensive record in its entirety, we believe that the evidence fully supports the trial court's findings that "[w]ith the execution and acceptance of the escrow agreement by the parties together with the delivery of the 40% beneficial interest to HPC, Barnard and HPC held their respective interest[s] in the land trust *** as individuals rather than as partnership property."

Initially, it is our view that in the light of the evidence presented, plaintiff's assertion that the parties acknowledged that the escrow agreement (which it now concedes was executed on the same date as the partnership agreement) was nothing more than a semantic modification made only as an accommodation or compromise necessitated by Barnard's inability to convey the entire beneficial interest is disingenuous and a misrepresentation of the record. Plaintiff's own witnesses, Borkowski and Bromberg, both testified, as did Barnard and Schein, that discovery of the collateral assignment to the village did not occur until several weeks *after* execution of the partnership and escrow agreements, Barnard's assignment of the 40% interest to HPC, and payment by HPC of the first installment. Furthermore, since it is undisputed that Barnard had collaterally assigned the entire beneficial interest to the village, it is obvious that he was not more legally able to convey 40% of it than he was able to convey 100% as originally provided and, thus, any supplemental agreement to that effect would be meaningless and make no sense.

Moreover, as the trial court noted, the direct assignment from Barnard to HPC and payment from HPC directly to Barnard, as well as Bromberg's acknowledgment that the assignment of the 40% interest and retention by Barnard of a 60% interest fully complied with the contribution portions of the agreement, evinces their understanding that Barnard's sole obligation regarding the trust property was to convey 40% of it to HPC.

We also agree with the trial court that HPC's conduct was inconsistent with its claim that the 60% interest was partnership property. Aside from Bromberg's testimony that he demanded that Barnard secure a reassignment from the village of the entire beneficial interest, which was directly contradicted by Barnard, there is nothing in the

record indicating that HPC ever asserted a claim to the 60% interest, treated Barnard's failure to obtain that reassignment as a default under the partnership agreement or expressed its desire to terminate the partnership. To the contrary, HPC's actions in making payment of the second installment months after being notified of the collateral assignment and receiving a copy of the reassignment by Barnard of the 40% interest, its subsequent negotiations with the village for the purchase of the 60% interest, and its claim as intervenor in the foreclosure action that as owner of that interest Evergreen should be assessed 60% of the amount necessary to cure the mortgage default all indicate that it did not consider the 60% interest as partnership property but, rather, as belonging to Barnard personally. It is also noteworthy that in September 1975, HPC made an offer to purchase a 45% interest in the property designated for phase II of the project under an agreement "[to] be structured essentially as was Westminster I."

■ Similarly, with respect to HPC's contention that Barnard breached his fiduciary duty to it by waiving notice of the private sale of his 60% beneficial interest, as the trial court correctly observed, HPC had actual notice from him and from Schein of the village's notice of default and intention to sell the interest and more than adequate time and opportunity to acquire it for what even Borkowski characterized as a "nominal" amount; but that despite Barnard's encouragement and frequent communications with both HPC and the village regarding the matter and his attempt to expedite the finalization of the transaction by waiving *his* right to further notice of the sale, HPC failed to reach an agreement with the village and thereby avert the subsequent sale to Evergreen.

As to the written waiver of notice on January 11, 1977, we agree with the trial court's evidentiary findings that the settlement of the litigation between Barnard and Evergreen did not involve the trust at issue and therefore was not injurious to plaintiff; that the reason HPC did not receive written notice as a beneficial interest holder was its own failure to lodge the executed assignment from Barnard with the trustee; and that because the 60% interest was not partnership property but owned individually by Barnard, he "was free to deal with his own property" and that "the waiver of notice and subsequent sale did not affect HPC's 40% interest." The court also properly noted the unsuccessful attempt made by Barnard to contact HPC's attorney from the bank regarding the proposed sale, and Barnard's voluntary contributions to the project as further evidence that he dealt with HPC in good faith.

In conclusion we believe that the trial court's findings that Barnard fulfilled his contractual and fiduciary duties under the partnership agreement are amply supported by the evidence.

For the reasons stated, the trial court's order entering judgment for defendant is affirmed.

Affirmed.

PINCHAM and MURRAY, JJ., concur.